GLENN BROWN, PRO SE
17007 BUCK HORN DRIVE
SISTERS, OR 97759
541-815-5513
glennbrown27@gmail.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| GLENN BROWN, an individual; | ) | CASE NO. 6:20 cv 829 MK |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES FOREST SERVICE, | ) | |
| HOLLY JEWKES, AS DESCHUTES NATIONAL | ) | |
| FOREST SUPERVISOR; UNITED STATES | ) | |
| FOREST SERVICE (USDA); OREGON | ) | |
| DEPARTMENT OF TRANSPORTATION, | ) | |
| GARY FARNSWORTH, AS ADMINISTRATOR | ) | |
| REGION 4; OREGON DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| Defendants. | | |

**PLAINTIFF'S MOTION TO SHOW CAUSE AND MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN ORDER TO SHOW CAUSE AND IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

Defendants have blocked Plaintiff's motorized vehicle access to the Deschutes National Forest along Oregon Highway 242 west of Sisters, Oregon. Plaintiff has demanded but defendants have refused to restore Plaintiff's motorized vehicle access. Defendants are irreparably harming Plaintiff by blocking is motor vehicle access through a closed highway gate.

## STATEMENT OF FACTS

Oregon Highway 242 climbs westward from Sisters passing through thousands of acres of public national forest lands, including two of Oregon's world-renowned scenic and recreational areas - the Three Sisters Wilderness Area and the Mount Washington Wilderness Area (National Forests.) Highway 242 crests the Cascades at McKenzie Pass - 5325' elevation and flanked on all sides by the grandeur of those wilderness areas. It's a special place. Highway 242 is built on a right-of-way easement granted by the United States Forest Service (USFS) to Oregon Department of Transportation (ODOT) under which ODOT operates and together they manage Highway 242. Affidavit of Glenn Brown, filed herewith (Brown Affid.) Par. 2.

Those National Forests include countless lakes, ponds and streams, meadows, mountains, glaciers and moraines, and all the fish, birds and wildlife that live there; endless opportunities for recreational users of all stripes and persuasions (Recreationists.) Id. Highway 242 provides Recreationists the only motorized access for many miles around to large swaths of those National Forests; it is the only motorized vehicle access to the higher elevations along Highway 242 (excluding snowmobiles, etc.) In the fall as mountain snows outstrip ODOT's ability to clear Highway 242, its East and West Gates are closed to motorized vehicles and remain closed until ODOT has cleared the highway in between, most often by early April. The East Gate nearest Sisters is at issue in this Action. Brown

Affid., par. 4, Exh. 1.

Highway 242 has for more than a century been used by Recreationists to access those National Forests to hike, camp, ski, ride horses, climb mountains, hunt, mountain bike, fish, view wildlife and other recreational pursuits. Plaintiff has for almost 42 years. Brown Affid., Par. 5.

Hunting, fishing, and many recreational activities require motorized vehicles - cars, SUV's, trucks - to transport Recreationists, their families, tents, campers, equipment, pets, pack animals, clothing, food and medical supplies, etc. into the National Forests. Most recreationists including Plaintiff simply cannot carry all that gear on our backs the 7 or so miles and 2000' elevation gain from the East Gate to McKenzie Pass, particularly as Recreationists age. So like Recreationists young and old Plaintiff requires and uses motorized vehicles to access the National Forests. If motorized vehicles are locked out of the National Forests at the East Gate, then so is Plaintiff along with thousands of other Recreationists. Brown Affid. Par. 6

Plaintiff spent his first night in Oregon in 1978 camped at Lava Lake off Highway 242 at McKenzie Pass. Over the 4 decades since Plaintiff has used (had to use) motorized vehicles on Highway 242 to access the National Forests where I camped skied, hiked, climbed, hunted, boated, fished and viewed wildlife. I've skied from Dutchman Flat to Three Creek Lake; over McKenzie Pass in early April; from the East Gate to Windy Point more times than I can remember. I've hunted forest grouse with my setter in the meadows between the lava fields and old-growth forests on McKenzie Pass, hunted deer and elk from multi-generation forest hunting camps there. Plaintiff's access to those National Forests was a major factor in my family's decision in 1995 to buy a vacation home in Sisters, and again in 2000 when we relocated there. I'm part of those National Forests and they're part of me, it's core to who I am. Brown Affid., Par. 7.

Plaintiff has tried several times this spring (2020) to pass through the East Gate on Highway 242 and into the National Forests beyond, but the East Gate is closed and blocking motorized vehicles from going into the National Forest lands beyond. USFS has published no public notice of a comment period nor any order or decision implementing the East Gate closure. Brown Affid, Exh. 8.

This happened before in 2019 (and earlier); working out of the public eye and with no prior public notice, USFS and ODOT locked out motorized vehicles from early April until mid-June 2019 at the East Gate, even though the highway beyond was by that time cleared of snow and passable. Brown Affid., par. 9.

On May 1, 2020 local media reported that ODOT had completed clearing Highway 242 to just beyond McKenzie Pass. Brown Affid., par. 10. That same afternoon Eurosports, a Sisters bike shop operated by former Sisters Mayor Brad Boyd, announced on its website that Highway 242 beyond the East Gate was now cleared of snow and open to bicycles [but not motorized vehicles] beginning Thursday afternoon through Sunday evening. Plaintiff asked both why Eurosports was being given up to date bike path information by ODOT but Plaintiff and the public were not. Id. Euroports quickly deleted its website announcement, ODOT activated Peter Murphy who explained:

"McKenzie Pass is Closed - "we just don't want people up there while we're working." Brown Affid., Exh. 6.

The East Gate remains closed and Plaintiff's motorized vehicles remain locked out.

## LEGAL AUTHORITIES

1. Injunction

A party seeking a temporary restraining order or preliminary injunction must demonstrate (1) it is likely to succeed on the merits, (2) it is or is likely to suffer

irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (citing *Winter*, 129 S. Ct. at 392) (reversing denial of preliminary injunction.)"AWR")

"[W]e are satisfied from the record that Plaintiffs have suffered such an [irreparable] injury." *Id.* at 1135 (finding irreparable injury where plaintiffs' recreational uses of a forest such as hunting, fishing, hiking, horseback riding, and cross country skiing were harmed). This injury supports injunctive relief."

[H]arm to the recreational or even the mere esthetic interests of the plaintiff will suffice to meet the irreparable harm requirement. *Sierra Club* v. *Morton*, 405 U. S. 727, 734–736 (1972). In *Sierra Club* Justice Scalia wrote that particularized harm to "recreational" or even "mere esthetic interests" is sufficient [irreparable harm for standing, same irreparable harm requirement for preliminary relief]. *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009).


2. Plaintiff's Legal Rights

a. "No person shall ... be deprived of life, liberty, or property, without due process of law." *United States Constitution* (1789), 5th Amendment. Due process rights include a right to public notice before a party's property rights are denied or curtailed by a government agency. *Goldberg v. Kelly*, 397 US 254 (1970)(due process requires a hearing before depriving a party of a state benefit.)

b. The Dingell Act, *16 USC Sec. 7901 et;* (Pub. L. 116–9, title IV, § 4001, Mar. 12, 2019, 133 Stat. 756.) The Dingell Act,

"[I]t is the policy of the United States that Federal departments and agencies, in accordance with the missions of the departments ... and applicable law, shall—

(1) facilitate the expansion and enhancement of hunting, fishing, and recreational shooting opportunities on Federal land, in consultation with the Wildlife and Hunting Heritage Conservation Council, the Sport Fishing and Boating Partnership Council, State and Tribal fish and wildlife agencies, and the public; ... and

(3). consider hunting, fishing, and recreational shooting opportunities as part of all Federal plans for land, resource, and travel management."
*16 USC Sec. 7901* (Emphasis added); (Pub. L. 116–9, title IV, § 4001, Mar. 12, 2019, 133 Stat. 756.) (The Dingell Act).

"Federal land shall be open to hunting, fishing, and recreational shooting, in accordance with applicable law, unless the Secretary concerned closes an area in accordance with section 7913 of this title." *Id.*, Sec. 7912 (emphasis added).

In general ... [A] temporary closure under this section may not exceed a period of 180 days ...[each temporary closure] must be subject to a separate notice and comment procedure in accordance with subsection (b)(2). *Id.* at Sec. 7913.

"Except in an *emergency*, before permanently or temporarily closing any Federal land to hunting, fishing, or recreational shooting agencies must consult with State fish and wildlife agencies; and provide public notice and opportunity for pubic notice and a comment period." *Id.* (Emphasis added).

Alleged government agency cost savings as a justification or defense to a plaintiff's claim must be sufficient in amount and sufficiently precise to tip the balance of equities or balance of hardships away from plaintiff. *AWR,* supra.

## ARGUMENT

The injunction power of a United States District Court is properly invoked where doing so would restore and protect a party's due process rights, statutory

rights, and would abate ongoing irreparable harm to the moving party while placing no unfair burden on the defendants, and where doing so would serve the public interest. This is one such case.

1. <u>Plaintiff has demonstrated a likelihood of success and has raised serious questions going to the merits of Plaintiff's claim.</u>

Dingell provides a step-by-step analysis for analyzing National Forest closures. The Dingell Act, supra.

First, is there a Closure? That seems like a simple question but that's the precise question presented here. Does blocking Plaintiff's motorized vehicle access to the National Forests close those areas to hunting, fishing, and recreational shooting under the Dingell Act? Plaintiff has demonstrated that it does, or has at least raised serious questions that it does.

The second inquiry under Dingell is whether the Closure is permanent, temporary (less than 1890 days), or an emergency closure? Here the closure is between roughly early April until mid-June - less than 180 days - a temporary closure.

Third, was there public notice of a subsequent comment period that would result in a reviewable decision? Here there was not.

Finally if all those questions are answered in Plaintiff's favor the Court must still consider whether the closure is excused because there is an emergency? (Is it in the public interest?) There is no emergency, just a bike path.

Therefore Plaintiff was entitled to and was denied his rights to prior notice and access when USFS and ODOT under The Dingell Act when, without excuse or justification blocked Plaintiff's motorized vehicle access to the public National Forests. The Dingell Act, supra., *AWR*, supra. In doing so defendants also denied Plaintiff his statutory rights to access to the National Forests, constituting a related but additional violation of Plaintiff's rights.

*Id., Winter*, supra.

<u>Without prior public notice defendants have temporarily blocked Plaintiff's motorized vehicle access to the National Forests.</u> Those simple undisputed facts meet <u>all</u> the elements of Plantiff's Dingell claim. Unless Defendants can point to an *ongoing emergency*, as is now is their burden, Plaintiff has demonstrated a high likelihood of success the merits that the temporary closure of the East Gate is illegal under Dingell.

As a legal and an equitable matter an *emergency* closure of the East Gate without prior notice *could* be justified, e.g. downed trees, fire, traffic accident, etc. The Dingell Act expressly excuses public land managers from public notice in the case of an *emergency* closure. *16 USC Sec. 7913(b)*, supra. Or a Court could find in a balancing of harms analysis that an imminent threat to the public justified an unnoticed emergency closure, and that the imminent threat to public safety outweighed any actual or likely irreparable harm to Plaintiff, including to his due process rights. Under either analysis, if there were a *bona fide* emergency closure Plaintiff's claim could be properly denied. Otherwise not.

No emergency is apparent. No smoke, no fire, no emergency has been reported, none has been suggested or pointed to by defendants. There is no emergency. ODOT's spokesman Peter Murphy explained:

"<u>McKenzie Pass is Closed [until June 20, 2020 because] ... We don't want people up there while we're working.</u>" <u>Exh</u>. 6, The Nugget, May 13, 2020.

It couldn't be any clearer than Mr. Murphy's, ODOT's, admission. There is no emergency - weather, fire, road or otherwise.

<u>There was no public notice required under Dingell</u>.

Mayor Boyd transmitted Cycle Oregon's closure request to ODOT, but failed to disclose that the request had come from Cycle Oregon. <u>Id</u>. Defendants then claimed there <u>had</u> been "a public process." <u>Id</u>. Let's assume for the moment that

there was a "public process" that effectively met the public notice requirements of due process and of The Dingell Act. Assuming all that defendants' public process still fails because Mayor Boyd never disclosed to the public that it was Cycle Oregon's request.

Plaintiff's June 3, 2016 email inquiry that found its way to the City of Sisters Recorder's response follows with font enlarged and emphasis added:

---------- Forwarded message ----------
From: **Kathy Nelson** <knelson@ci.sisters.or.us>
Date: Fri, Jun 3, 2016 at 3:51 PM
Subject: RE: 242 closure
To: Nancy Connolly <nconnolly@ci.sisters.or.us>, Glenn <glennbrown27@gmail.com>
Cc: Chris Frye <CFrye@ci.sisters.or.us>


Good Afternoon Glenn,
I am not aware of any process the City was involved with regarding Highway 242 other than the attached letter from the Council at the request of Cycle Oregon. Since it is not within our City limits and is a state highway, ODOT would have been involved on some level.

Kathy Nelson
City Recorder
541-323-5213
knelson@ci.sisters.or.us


-----Original Message-----
From: Nancy Connolly
Sent: Friday, June 3, 2016 2:07 PM
To: Glenn <glennbrown27@gmail.com>
Cc: Chris Frye <CFrye@ci.sisters.or.us>; Kathy Nelson <knelson@ci.sisters.or.us>

Subject: RE: 242 closure

Glenn,

I have only been on City Council since January 2015. I have cc'd Kathy Nelson, our City Recorder of your request for information. She should be able to answer your question about council involvement and/or archive information. I also cc'd Mayor Frye as he may recall if any discussions occurred.

Nancy

---

From: Glenn [glennbrown27@gmail.com]
Sent: Friday, June 03, 2016 1:44 PM
To: Nancy Connolly
Subject: 242 closure

Hi,

I'm not a city resident but have been talking with Unger and Region 4 about the closure of 242 to traffic until June 20. I'd like it opened if it's ready or could be.

In talking with them they indicated that an extensive public process was undertaken between 2012 or so and 2014. I can't find any record of it in the paper. Did the city council participate in that process or is there and archive I could search to check it out please?

Thanks,

Glenn Brown

DISCLOSURE NOTICE: Messages to and from this E-mail address may be subject to Oregon Public Records Law."

---

The letter attachment transmitted in Ms. Nelson's email to Plaintiff follows with font enlarged and emphasis added:

"May 17, 2013

Robert Bryant
Region 4 Manager
Oregon Department of Transportation
63055 N. Highway 97
Bend, OR 97701

Dear Bob,

As the recent survey of Oregon tourism shows, bikes mean business to Oregon. The city of Sisters understands this (approximately $400 million contributed to the Oregon economy in 2012). Our small community (population 2,000) was hit hard by the great recession. Our town benefits greatly from the many cyclists who come to ride the fabulous roads and trails in and around Sisters. This year, ODOT opened McKenzie Highway 242 earlier than I can remember in more than 20 years. We are grateful for this, because we have seen a huge boost in visitors to our town to enjoy this one-of-a-kind experience. It truly is that; people come from all over the US, and internationally, to ride this spectacular road.

<u>It is because of this positive economic impact that I am writing to you with a request for ODOT. We ask that going forward, ODOT clear McKenzie Highway 242 of snow as early as is feasible in April and keep the road open to cyclists and pedestrians and closed to cars until approximately the middle of June each and every year. This will attract many more cyclists than if motorized vehicles are allowed, because it's a unique experience.</u>

It would be helpful if the city of Sisters has a target date, a "range" for the McKenzie being open (we realize this is weather dependent for ODOT's snow clearing equipment) to pedestrians and cyclists. Then, our Chamber of Commerce and businesses can market to people to come and enjoy this unique and truly world-renowned experience. As this is traditionally a very quiet time in our town for tourists, having them patronize our hotels, merchants, and restaurants would mean much to our town in helping it to not only recover from the recession, but to once again continue to thrive. This will also continue to boost the growing area of cycling tourism in Oregon.

Please feel free to contact me if you have any questions or wish to discuss this matter further.

Warm regards,


Brad Boyd
Mayor
City of Sisters

Cc: Sisters City Council
Andrew Gorayeb, City Manager
Kathy Nelson, City Recorder
Erin Borla, Sisters Chamber of Commerce"

Brown Affid., Exh. 3.

There's no emergency on McKenzie Pass, they're running a secret bike path up there. That's a bike path too far. Plaintiff has shown a high likelihood of success on the merits, surely serious questions going to the merits.

2. Plaintiff will continue to suffer irreparable harm unless defendants are enjoined.

The closed East Gate continues to harm Plaintiff's recreational interests by blocking motor vehicle access beyond. That irreparable harm to Plaintiff's recreational interests satisfies the irreparable harm requirements for preliminary injunctive relief. "[W]e are satisfied from the record that Plaintiffs have suffered such an [irreparable] injury." *AWR*, 632 F.3d at 1135 (reversing denial of preliminary injunction, finding irreparable injury where plaintiffs' recreational uses of a forest such as hunting, fishing, hiking, horseback riding, and cross country skiing were harmed). This injury supports injunctive relief.

But why if the the East Gate is scheduled to open on June 20, 2020 is Plaintiff here now asking for this Court's emergency help? Because Plaintiff continues to suffer the ongoing irreparable harm of the concerted suppression of a fundamental and constitutional right, which will continue defendants unless defendants are enjoined.

A question for defendants might be "Why should <u>this</u> illegal closure be allowed to continue for another day, much less for weeks? What equitable considerations tip the balance of equities in defendants' favor when balanced against <u>this</u> ongoing violation of plaintiff's due process and other rights?

3. <u>The balance of harms and hardships tips sharply in Plaintiff's favor.</u>

Plaintiff's harm must be balanced against the hardship or harm that would be placed onto defendants if Plaintiff's Motion were granted. *AWR*, supra; *Winter*, supra  There would be no unfair burden and no irreparable harm to defendants. Opening the East Gate is a trivial task, turn a key and open the gate. Nor would it be unfair to order a government agency to follow its own public notice and comment period rules and laws.

2. <u>Granting Plaintiff's Order would advance the public interest by furthering - ordering - government agency transparency where there is none now.</u>

This is <u>critically</u> important. Very few members of the public have the wherewithal to prepare, file and litigate an action to enforce their rights in federal court against not just one, but two powerful government agencies with their lawyers and endless resources. It's a daunting task. It has a personal and a financial cost. It's an insurmountable hurdle to nearly all of the general public. The Court can help level this playing field by granting Plantiff's Motion. Doing so would send this USFS closure proposal into a public notice and comment period under USFS administrative procedures where <u>all</u> of the public could participate. That would best serve the public interest.

3. <u>Granting Plaintiff's Motion would best serve the interests of judicial economy.</u>  Litigating this case to a final judgment would require hours and hours of the Court's and the Parties' time, thousands of hours of attorneys' time, and significant out-of-pocket expenses to be borne by the Parties (one of whom can ill-

afford it.) Instead and to avoid all of that, Defendants should be ordered to simply follow the required public notice and comment laws and publish a reviewable order. If this Court were later asked to review that order, then the Court would have before it a more well-developed record that would require fewer judicial resources in order for the Court to reach its decision. Granting Plaintiff's Motion would achieve that.

4. Granting Plaintiff's Motion would further serve the interests of justice by removing any need for Plaintiff to proceed with this action against (recently arrived) Deschutes National Forest Supervisor Jewkes. Plaintiff initially named the Forest Supervisor as a defendant because she is now the local Forest Service Administrator with specific responsibility and authority under the Forest Service Supervisor's Manual to oversee ODOT's Highway 242 easement. If Plaintiff's Motion is granted and the East Gate opened, Plaintiff has no further jurisdictional or other need for the Forest Supervisor to remain in this action. Most importantly Plaintiff has no evidence that Supervisor Jewkes participated in or ever sanctioned the events complained of herein.

Supervisor Jewkes inherited this temporary closure, wrong place at the wrong time. Moreover the recently enacted Dingell Act (2019) has brought significant changes to public lands management that even experienced Forest Supervisors are only now encountering for the first time. For Plaintiff to continue against Supervisor Jewkes would be unnecessary if Plaintiff's Motion were granted, and in any event it would be extremely unfair to the Forest Supervisor.

## CONCLUSION

If Cycle Oregon wanted McKenzie Pass for its own bike path why didn't it ride over to a city council meeting and ask in person? Everyone in Sisters knows the answer to that last question, so do Cycle Oregon and Eurosports. They chose a

different ride. They continue working in concert to *try to* muzzle this citizen who is simply trying to access his National Forests. That could <u>never</u> be in the public interest, surely not in Sisters, not for one more day.

## Plaintiff's Exhibits

Exhibit ~~1~~ 2 is a true and accurate copy of a photograph taken by Plaintiff on May, 8, 2020 and showing Highway 242 west of Sisters, Oregon, the closed East Gate and the National Forests behind.

Exhibit ~~2~~ 3 - is a true and accurate copy of City Of Sisters Recorder email to Glenn Brown, June 3, 2016.

Exhibit ~~3~~ 4 is a true and accurate copy of Letter from Sisters Mayor Brad Boyd to ODOT Region 4 Administrator Bob Bryant, May 17, 2013.

Exhibit ~~4~~ 5 - is a true and accurate copy of Bob Bryant/Gary Farnsworth, Alan Unger, and Eurosports emails to/from Plaintiff.

Exhibit ~~5~~ 1 - <u>McKenzie Pass is Closed</u>, Murphy, Peter, The Nugget, Issue No. ___, page no. ___; May ___, 2020.

## Authorities Cited

*United States Constitution* (1789), 5th and 14th Amendments.

*Sierra Club* v. *Morton*, 405 U. S. 727, 734–736 (1972)*Goldberg v. Kelly*, 397 US 254 (1970)

Summer v.

*Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008).

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)