IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GLENN C. BROWN,                         Case No. 6:20-cv-00829-MK

                                                  **OPINION AND ORDER**

           Plaintiff,

      vs.

UNITED STATES FOREST SERVICE, et al.,

           Defendant.

_____

AIKEN, District Judge:

Plaintiff Glenn Brown brings this action *pro se* against defendants United States Forest Service ("USFS"), Holly Jewkes, Oregon Department of Transportation ("ODOT"), and Gary Farnsworth. He alleges that defendants decided to keep the gates to Oregon State Highway 242 locked until June 20, 2020, without public notice or comment. Plaintiff asserts that defendants' actions violate procedural due process and the provisions of the John D. Dingell Jr. Conservation, Management, and Recreation Act ("the Dingell Act") that concern access to federal land for hunting,

Page 1 – OPINION AND ORDER

fishing, and recreational shooting. Pub. L. No. 116-9, 133 Stat. 580, 756–62 (2019); *see* 16 U.S.C. §§ 7901–7915. Plaintiff now moves for a temporary restraining order ("TRO") and preliminary injunction to require defendants to open the East gate of the highway immediately and engage in a public process regarding seasons closures of Highway 242. For the reasons below, the motion (doc. 3) is DENIED.[1]

## LEGAL STANDARD

The same general legal standards govern temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65; *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A plaintiff seeking such relief generally must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22, (2008) (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction). The court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

## DISCUSSION

This case concerns Oregon Highway 242, the federal lands it bisects, and two gates that seasonally control motor vehicle access to the highway and land. The

---

[1] The Court has determined this motion suitable for resolution without a hearing. LR 7-1(d)(1).

following factual findings are based on plaintiff's Complaint, the present motion, plaintiff's declaration, and his exhibits. Plaintiff describes the area as follows:

> Oregon Highway 242 climbs westward from Sisters passing through thousands of acres of public national forest lands, including two of Oregon's world-renowned scenic and recreational areas - the Three Sisters Wilderness Area and the Mount Washington Wilderness Area (National Forests). Highway 242 crests the Cascades at McKenzie Pass - 5325' elevation and flanked on all sides by the grandeur of those wilderness areas. It's a special place. Highway 242 is built on a right-of-way easement granted by the United States Forest Service (USFS) to Oregon Department of Transportation (ODOT) under which ODOT operates and together they manage Highway 242. . . .
>
> Those National Forests include countless lakes, ponds and streams, meadows, mountains, glaciers and moraines, and all the fish, birds and wildlife that live there; endless opportunities for recreational users of all stripes and persuasions (Recreationists.) . . . Highway 242 provides Recreationists the only motorized access for many miles around to large swaths of those National Forests; it is the only motorized vehicle access to the higher elevations along Highway 242 (excluding snowmobiles, etc.). In the fall as mountain snows outstrip ODOT's ability to clear Highway 242, its East and West Gates are closed to motorized vehicles and remain closed until ODOT has cleared the highway in between, most often by early April.

Mot. at 2 (citing Brown Decl. (doc. 4) ¶ 2).

Recreationists have used Highway 242 to access those areas to "hike, camp, ski, ride horses, climb mountains, hunt, mountain bike, fish, [and] view wildlife" among other pursuits. Brown Decl. ¶5. As a practical matter, the seasonal closure of the gates limits who can access the areas and the activities available to those who can. As plaintiff explains, many Recreationists need to use cars, SUVs, and trucks to transport themselves, "their families, tents, campers, equipment, pets, pack animals, clothing, food and medical supplies, etc. into the National Forests. Most recreationists including Plaintiff cannot simply carry all that gear on our backs the 7

or so miles and 2000' elevation gain from the East Gate to McKenzie Pass, particularly as Recreationists age." Mot. at 3 (citing Brown Decl. ¶ 6). In short, "[i]f motorized vehicles are locked out of the National Forests at the East Gate, then so is Plaintiff along with thousands of other Recreationists." *Id*.

Plaintiff has lived in Oregon and recreated in the McKenzie Pass area since 1978. Brown Decl. ¶ 7. He has "camped skied, hiked, climbed, hunted, boated, fished and viewed wildlife" in the area "more times than [he] can remember." *Id*. Plaintiff's family bought a vacation home in Sisters in 1995 and relocated there in 2000. *Id*. Access to the National Forests in the McKenzie Pass area "was a major factor" in both decisions. *Id*. For plaintiff, recreating in the area is "personal, it's spiritual, it's core to who" he is. *Id*.

Plaintiff does not appear to take issue with ODOT's decision to close Highway 242 in the winter and spring, but rather, its recent practice of continuing the closure until the third weekend in June, regardless of road conditions. Plaintiff alleges that "[i]n 2019 (and before), working out of the public eye and with no prior public notice, USFS and ODOT locked out motorized traffic from early April, even though Highway 242 was then passable to motorized traffic, until mid-June." *Id*. ¶ 9. He alleges that the agencies are "operating a bike path beyond the East Gate" during that time. *Id*. ¶ 10.

This spring, plaintiff tried to access the McKenzie Pass area from the East Gate on several occasions, "but the East Gate is closed and blocking motorized traffic." *Id*. ¶ 8. On May 1, 2020, local news outlets reported that ODOT had completed

clearing the snow off Highway 242. *Id*. ¶ 11. Later that afternoon, a bike shop in Sisters operated by the former Mayor, Brad Boyd, announced on its website that the highway was "open to bicycles beginning on that [afternoon] and following Thursday afternoons through Sunday evenings." *Id*. Plaintiff complained to Boyd and to defendant Farnsworth and asked why the store "was being provided with up to date bike path information, information that was not available to the public, at least to Plaintiff." *Id*. ¶ 11. Boyd deleted the post from his shop's website and Farnsworth responded to plaintiff's email denying that Highway 242 was open. *Id*.

On May 5, 2020, The Nugget, a Sisters newspaper, published a story titled "McKenzie Highway is not open." Brown Decl. Ex. 1. The story reported "[w]hile ODOT has finished its plowing operations on the east side of McKenzie Pass, the road is not open – to anyone – and won't be until mid-June" and it observed that "[t]he status of the roadway from the eastern snow gate to the summit has been a point of confusion and contention for several years." *Id*. The story explained:

> ODOT plows a single lane through the snow on the road during the spring, and then lets the snowmelt do the rest. Once the snow is melted off, work crews sweep the roadway to clear debris . . . and patch potholes created over the winter. Opening of the highway used to be arbitrary – the gate was opened whether the work was done. For the past several years, the agency has determined upon a consistent third-Monday-in-June opening.
>
> During the plowing and maintenance period, the roadway is closed to traffic. However, cyclists and walkers go around the gate to use the roadway and public perception has grown that the road is open for cyclists – car free. That perception has been promoted extensively in the past and again recently in the local media—and ODOT Region 4 Director Gary Farnsworth really wants it corrected.

*Id*.

Page 5 – OPINION AND ORDER

The story then quoted statements that Farnsworth had made in "an email communication to a couple Sisters residents," referencing Farnsworth's email to plaintiff and Boyd, and statements made directly to The Nugget. *Id*. Farnsworth stated, unequivocally, "It's not open. . . . The sign says 'Road Closed.'" *Id*. Farnsworth acknowledged that ODOT had taken down an "authorized personnel only" sign, because the agency had not been conducting road maintenance operations, but might post it again "[i]f and when we need to conduct additional operations[.]" *Id*. Farnsworth noted that ODOT does not want anyone to go past the gate for safety reasons even though "will continued to make their own choices" to travel beyond the gate. *Id*. Farnsworth emphasized that ODOT did not enforce the road closure other than the gating and does not expect other organizations like USFS or law enforcement to enforce it, so those who enter the closed roadway "are entering at their own risk." *Id*.

Plaintiff filed his Complaint on May 22, 2020, alleging that, by deciding to keep the East Gate locked even after the snow has melted off the eastern half of Highway 242 without providing public notice or an opportunity to comment defendants violated procedural due process and 16 U.S.C. §§ 7912 and 7913, provisions of the Dingell Act which require that federal land "be open to hunting, fishing, and recreational shooting," and prohibit permanent or temporary closures of federal land to those activities without notice and comment. Plaintiff filed the present motion on May 28, 2020, but did not pay the filing fee until June 2, 2020.

I.   *The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims against USFS, Jewkes*

Before turning to the TRO and preliminary injunction motion, the Court must first address its own power to hear plaintiff's claims. "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). The court "is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981). Because subject matter jurisdiction goes to the power of a court to hear a case, a court may, at any time, raise the issue of subject matter jurisdiction *sua sponte* and must dismiss if no subject matter jurisdiction exists. Fed. R. Civ. P. 12(h)(3); *Snell v. Cleveland, Inc.*, 316 F.3d 811, 826 (9th Cir. 2002).

Here, the Court must dismiss plaintiff's claims against USFS, Jewkes, Deschutes National Forest Supervisor for USFS, and ODOT for lack of subject matter jurisdiction because they are barred by federal and state sovereign immunity.

Beginning with the federal defendants, USFS and Jewkes, "[s]uits against the federal government are barred for lack of subject matter jurisdiction unless the government expressly and unequivocally waives its sovereign immunity." *Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014). Without a waiver, sovereign immunity bars both equitable and legal claims against the United States, its agencies, and its officers acting in their official capacities. *Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil & Gas Cons. of State of Mont.*, 792 F.2d 782, 792 (9th Cir. 1986). The party suing the United States bears the burden of

identifying an unequivocal waiver of immunity. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983).

Defendant USFS is a division of a federal agency, the United States Department of Agriculture, and defendant Jewkes is a federal official whom plaintiff appears to have sued in her official capacity. *See* Mot. at 14 ("Supervisor Jewkes inherited this temporary closure, wrong place at the wrong time."). The Complaint does not identify any basis for a waiver of federal sovereign immunity for plaintiff's requests for injunctive relief.

The Complaint alleges federal question jurisdiction under 28 U.S.C. § 1331. Compl. at 3. "A statute may create subject matter jurisdiction yet not waive sovereign immunity." *Powelson v. United States, By & Through Sec'y of Treasury*, 150 F.3d 1103, 1105 (9th Cir. 1998). Section 1331 creates federal court jurisdiction for claims "arising under the Constitution, laws, or treaties of the United States," but it does not waive the United States' sovereign immunity. *Holloman*, 708 F.2d at 1401. The Complaint also alleges violations of 16 U.S.C. §§ 7901 to 7915, but nothing in those provisions expresses the United States' consent to suit for such violations. Similarly, nothing in plaintiff's motion identifies a waiver of federal sovereign immunity for his claims. Thus, plaintiff has failed to demonstrate that the Court has jurisdiction over his claims against USFS and Jewkes.

Turning to ODOT, which is an agency of the State of Oregon, the Eleventh Amendment provides that a state is immune from suit in federal court unless Congress has abrogated the state's immunity by appropriate federal legislation or the

state itself has waived it. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011). This grant of immunity covers not just the state itself, but also the state's agencies. *P. R. Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 144 (1993). Neither the Complaint nor plaintiff's motion identify an abrogation of state sovereign immunity, 16 U.S.C. §§ 7901 to 7915 do not purport to authorize suit against the states, or express waiver by Oregon. Thus, plaintiff has failed to demonstrate that the Court has jurisdiction over his claims against ODOT. [2]

Accordingly, plaintiff's claims against USFS, Jewkes, and ODOT are dismissed for lack of subject matter jurisdiction. Because plaintiff is *pro se*, and could cure these jurisdictional deficiencies by amendment, he will be given leave to file an amended complaint restating these claims. If plaintiff does not file an amended complaint within the time provided in the conclusion below, then he will be permitted to proceed only on his claims against Farnsworth.

## II.   *Motion for TRO and Preliminary Injunction*

Turning to the *Winters* factors, the Court finds that two, likelihood of success on the merits and likelihood of irreparable harm, weigh strongly against granting plaintiff's requested relief.

---

[2] The Eleventh Amendment also generally bars suits against state officials acting in their official capacity. *P. R. Aqueduct & Sewer Auth.*, 506 U.S. at 144. In *Ex Parte Young*, however, the Supreme Court provided a narrow exception to Eleventh Amendment Immunity for certain suits against state officers. *Ex Parte Young*, 209 U.S. 123, 155–56 (1908). The *Ex Parte Young* exception permits a suit against a state official "when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'" *Black v. Haselton*, 663 F. App'x 573, 576 (9th Cir. 2016) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996)). Liberally construed, plaintiff's due process claim against Farnsworth could fall within the *Ex Parte Young* exception, so the Court will not *sua sponte* dismiss the claims against Farnsworth for lack of subject matter jurisdiction at this stage.

## II.   *Likelihood of Success on the Merits*

Although the Complaint frames plaintiff's requested relief as a TRO and preliminary injunction that "enjoin[s] defendants from closing and locking the East Gate of Highway 242 (except in for emergency or weather-related closures) unless defendants first provide" a public notice and comment period, Comp. at 7, the record indicates that Highway 242 is closed and has been all winter. Plaintiff's motion suggests that he seeks a TRO and preliminary injunction that would require defendants to open the East Gate and engage in a public decision-making process before litigating the merits of his claims. Mot. (doc. 3) at 13–14. Thus, plaintiff seeks a "mandatory injunction," which "orders a responsible party to take action" and is particularly disfavored." *Maryln Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citation and quotation marks omitted).

Under the first *Winters* factor, a plaintiff seeking a TRO or preliminary injunction must generally show that he or she "is likely to succeed on the merits." *Winters*, 555 U.S. at 22. But when a plaintiff requests a "mandatory injunction," that "already high standard . . . is further heightened," and the plaintiff must "'establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed.'" *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156–57 (D. Or. 2018) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in *Garcia*)).   Here, plaintiff alleges violations of procedural due process and of 16 U.S.C.

§ 7901 to 7915, but he has not shown a likelihood of success on the merits of either claim, let alone that the law and facts clearly favor his position.³

Plaintiff's first claim alleges that defendants' actions violated his right to procedural due process.⁴  Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment[s]." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

Plaintiff correctly asserts that "[d]ue process rights include a right to public notice before a party's property rights are denied or curtailed by a government agency." Mot. at 5 (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).  But plaintiff does not identify what property interest he was allegedly denied.  To state a violation of due process, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought, and if no protected interest is

---

³ The Ninth Circuit also provides an alternative preliminary injunctive relief test: the "serious questions" test. *All. for the Wild Rockies*, 632 F.3d at 1131–32. Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction 'if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff' and the injunction is in the public interest." *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (quoting *M.R. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012)).  Plaintiff argues that he has, at the very least, demonstrated serious questions going to the merits. However, where, as here, plaintiffs seek a mandatory injunction, courts decline to apply the "serious questions" test. *See P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1126, 1135 (C.D. Cal. 2015) ("Plaintiff seek a mandatory injunction, and Court declines to interpret the 'serious questions' standard for purposes of the Motion as inconsistent with the Ninth Circuit's guidance that a mandatory injunction not issue in 'doubtful cases' and not be granted 'unless the law and facts clearly favor the moving party.'"). The Court agrees that the "serious questions" standard is not consistent with the higher burden for mandatory injunctions. Further, as explained below, plaintiff's motion would fail under the "serious questions" standard because he has not demonstrated a likelihood of irreparable harm or that the balance of hardships tip in his favor.

⁴ Although the Court has dismissed the claims against ODOT and the federal defendants, and it is unclear what role, if any USFS and Jewkes play in ODOT's decisions regarding the East Gate closures, the Court will refer to "defendants" for most of this analysis for simplicity's sake.

at stake, no process is required. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Once a plaintiff asserting a procedural due process claim has identified a protected property or liberty interest, the plaintiff must explain what additional process they should have received. Plaintiff alleges that he was entitled to and denied public notice and comment of the decision to keep the gates on Highway 242 locked until mid-June. Even if due process required defendants to engage in notice and comment, the facts that plaintiff asserts to demonstrate that they did *not* falls short of showing that the facts are clearly on his side. Plaintiff asserts that defendants did not engage in notice and comment in 2019 or 2020, but he does not assert facts to demonstrate how he knows that. For example, plaintiff does not assert that he checked the places where state and federal agencies are typically required to publish notice of a proposed decision, like the Oregon Secretary of State's bulletin, the Federal Register, agency websites, and local newspapers, to determine whether either agency had provided notice and public process. In fact, plaintiff's motion and declaration suggest that he is not sure when defendants made the decision. ODOT appears to have adopted its practice of opening the East Gate on the third Monday of June several years ago. The record suggests that was a one-time policy decision to create a consistent opening date, rather than a decision that has been re-made each year. There is no evidence in the record to indicate whether defendants engaged in notice and comment at that time.

Plaintiff's second claim alleges a violation of §§ 7912 and 7913 of the Dingell Act. As noted above, these provisions do not appear to impose any obligations on state officials like Farnsworth, but even if they did, plaintiff has not made a clear showing that closure of the East Gate violated these provisions. Section 7912 provides that "Federal land [in National Forests] shall be open to hunting, fishing, and recreational shooting, in accordance with the applicable law, unless the Secretary [of Agriculture] closes an area in accordance with section 7913." 16 U.S.C. § 7912. And, "[e]xcept in an emergency," § 7913 requires the Secretary to consult with state fish and wildlife agencies and provide public notice and an opportunity for comment "before permanently or temporarily closing any Federal land to hunting, fishing, or recreational shooting[.]" 16 U.S.C. § 7913(b)(1).

Plaintiff contends that his assertion that he cannot access, and therefore, cannot recreate on, the National Forest areas along Highway 242 when the gate is closed is enough to show that those areas have been "clos[ed] to hunting, fishing, and recreational shooting" within the meaning of § 7913. But plaintiff's own reasoning suggests another interpretation of the Dingell Act. As plaintiff explains, the East Gate blocks motor vehicle access to the McKenzie Pass area, limiting access for all forms of recreation on those lands. By contrast, § 7913 specifically prohibits closure "to hunting, fishing, or recreational shooting," which suggests that its seeks to prevent USFS from figuratively "closing" the land to hunting, fishing, and shooting – that is, prohibiting those activities on the land – rather than literally closing it – prohibiting all access to the land. Section 7913(b)(1)'s requirement that USFS consult

Page 13 – OPINION AND ORDER

with state fish and wildlife agencies before closures provides further support for that interpretation. Plaintiff offers no authority for his interpretation of the Dingell Act.

Finally, even assuming the closed gate was a "closure" under the Dingell Act, the Act permits such closures if there is public notice and a comment period. As discussed above, plaintiff fails to assert facts sufficient to show that defendants failed to engage in a public process.

### III.   *Irreparable Harm*

Plaintiff contends that his inability to participate in outdoor recreation in the McKenzie Pass area satisfies the irreparable harm requirement for a TRO or preliminary injunction. Plaintiff relies on the Ninth Circuit's decision in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). There, the plaintiff, AWR, sought a preliminary injunction, seeking to enjoying a timber salvage sale proposed by the USFS. The proposed sale involved logging on 1,652 acres of national forest and the construction of temporary roads through the forest. *Id.* at 1129. AWR alleged that its members used the forest, including the areas subject to logging, for work and recreational purposes. *Id.* at 1135. AWR asserted that the logging would irreparably harm "its members' ability to view, experience, and utilize the areas in their undisturbed state." *Id.* (internal quotation marks omitted). The Ninth Circuit agreed and held that AWR had demonstrated a likelihood of irreparable "environmental injury," that is "environmental harm in a forest area" used by its members. *Id.*

Here, plaintiff does not assert an environmental injury. He does not complain that defendants conduct is or will damage or change the national forest lands in the

McKenzie Pass area. Instead, he seeks relief from a temporary restriction on his access to those lands, during a time of year when the road to them is clear enough for motor vehicles to travel on them. Nor does plaintiff assert an injury that is irreparable. In *Alliance for the Wild Rockies*, the Ninth Circuit noted that "the Supreme Court has instructed us that environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Id*. Here, plaintiff's restriction will continue for a another two to three weeks at most.

Because plaintiff fails to satisfy the likelihood of success on the merits and likelihood of irreparable harm *Winters* requirements, the Court denies plaintiff's motion without addressing the balance of the hardships or public interest.

## CONCLUSION

For the reasons above, plaintiff's Motion (doc. 3) is DENIED. Plaintiff's claims against ODOT, USFS, and Jewkes are DISMISSED with leave to amend. Plaintiff shall have thirty (30) days from the date of this Order in which to file an amended complaint restating his claims against those defendants. Plaintiff is advised that if he fails to file an amended complaint within that time, then the case will proceed only on his claims against Farnsworth.

IT IS SO ORDERED.

Dated this  5th  day of June 2020.

/s/Ann Aiken

Ann Aiken
United States District Judge